# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

UNITED STATES OF AMERICA

V.

*Kyle Filbert Gray*

ELECTRONIC CRIMINAL COMPLAINT
(REDACTED)

CASE NUMBER: 15-04085 MJ-001-PCT-MEA

I, Special Agent Ryan R. Butler, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### Count 1

On or about December 16, 2014, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendant, KYLE FILBERT GRAY, an Indian, with malice aforethought, did unlawfully kill TS, a non-Indian, in violation of Title 18, United States Code, Sections 1111(a) and 1153.

I further state that I am a Special Agent of the Federal Bureau of Investigation, and that this complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN.**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

REVIEWED BY: *AUSA Patrick J. Schneider*

__X__ Pursuant to 28 U.S.C. §1746(2), I declare that the foregoing is true and correct.

Executed on: _April 14, 2015_

_____ Sworn By Telephone

Ryan R. Butler, Special Agent, FBI
Complainant's Name and Title

Complainant's Signature

_April 15, 2015_
Date

Flagstaff, Arizona
City and State

JOHN BUTTRICK, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

### **ELECTRONIC REDACTED AFFIDAVIT**

The undersigned, being duly sworn, deposes and states as follows:

#### Introduction and Agent Background

1.  Your affiant, Ryan R. Butler, is a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and is currently assigned to the Gallup Resident Agency of the Phoenix, Arizona FBI Division. He has been employed as a Special Agent with the FBI since November, 2009, and has investigated numerous violations of federal law. He is an investigator and/or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. He is empowered to conduct investigations and make arrests for violations of federal offenses. In the course of his official duties, your affiant is charged with the investigation of crimes occurring on the Navajo Indian Reservation within the District of Arizona.

2.  The statements contained in this affidavit are based on your affiant's investigation, as well as information derived from reports and interviews of the law enforcement officers and witnesses named herein. Because this affidavit is made for the limited purpose of establishing probable cause, your affiant has not listed each and every fact known concerning this investigation.

3.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of United States Code, 18 U.S.C. Sections 1153 and 1111 (Second Degree Murder) have been committed on the Navajo Nation Indian Reservation, within the District of Arizona, by KYLE FILBERT GRAY (referred to as "Kyle").

1

Kyle is a 24 year-old Native American (Navajo) male. Navajo Police Criminal Investigator (CI) Esther Charlie confirmed on 04/13/2015 that Kyle's census number was 527,221, which confirms Kyle's status as an enrolled member of the Navajo Nation tribe.

4. The victim of Kyle's acts, which occurred on or about 12/16/2014 within the confines of the Navajo Nation Indian Reservation, was TS, a 44 year-old Hispanic, non-Native American, male.

## Probable Cause

5. On 12/27/2014, a missing person report was filed on behalf of TS with the Gallup Police Department (GPD) by his family. The report indicated TS had not been seen by his family since 12/14/2014. At the time of his disappearance, TS was driving a four-door Ford Taurus, VIN 1FAFP554236173373. On 01/30/2015, your affiant met with TS's family, who corrected the VIN of TS's vehicle as 1FAFP55U23G173373.

6. On 01/14/2015, Navajo Police Criminal Investigator (CI) Darrell Boye was briefed by GPD regarding the missing person investigation.

7. On 01/24/2015, CI Boye and SA Sherry C. Rice identified and interviewed a cooperating witness (referred to as CW). CW acknowledged that he/she knew TS, but was not initially forthcoming about the last time the CW had seen TS. Eventually CW admitted that he/she had not been forthcoming because of threats made against the lives of CW and CW's child if CW "told." CW then provided the following information regarding TS's murder.

8. CW indicated that on or about 12/16/2014, CW was with TS when he drove his four-door sedan to Wheatfields Lake to sell methamphetamines. TS met two men in a white pickup truck and sold them approximately 3.5 grams of methamphetamines. After the transaction was concluded, TS was walking back toward his vehicle when CW heard a "pop"

and saw the two men exit the pickup truck. CW saw that the man who was in the truck's passenger seat was holding a long, slender gun pointed at TS. CW heard another "pop" and saw the male passenger walking toward TS while he fired a third shot. TS initially made a gargling sound, and then went quiet after the third shot.

9. CW indicated that one of the men opened the driver's-side door to TS's vehicle and opened the trunk. Something heavy was loaded into the trunk, which CW was sure was TS's body, and it was closed again. The male passenger, hereinafter referred as "shooter," got into the driver's seat of TS's vehicle, and the truck's driver returned to drive the pickup. CW identified the truck's driver as a male known to CW as "Kingz," hereinafter referred as "Kingz." CW remained in TS's vehicle and plead with the "shooter," who was driving TS's vehicle, to spare his/her life. The males drove CW into the mountains between Wheatfields and Tsaile, AZ and, after briefly separating, met at a pre-arranged location. There, they opened the trunk of TS's car, and CW felt a heavy weight removed from the vehicle. CW remained in TS's vehicle, but saw a fire burning and the "shooter" removing items from TS's vehicle and placing them into the white truck. Then CW heard a sound like the chopping of wood. CW saw "Kingz" using a long-handled axe to chop TS's body into pieces and place them in the fire.

10. Eventually, the "shooter" returned to drive TS's vehicle, and "Kingz" returned to drive the truck. Both vehicles departed with CW still in TS's vehicle. Later, they stopped at a fork in the road and moved CW into the white truck with "Kingz". The vehicles drove off in separate directions. "Kingz" told CW that they "were not supposed to leave any witnesses." CW plead for his/her life, "Kingz" warned CW that if CW alerted law enforcement, he would come after CW's daughter. "Kingz" eventually released the CW later that night.

11. CW stated "Kingz" lived in Lukachukai, AZ. CW provided a physical description of "Kingz," to include identifying tattoos. CW also provided physical descriptions of TS's sedan and "Kingz" white pickup.

12. On 01/24/2014, your affiant was notified of the above information. On that same date, CW accompanied your affiant, CI Boye, and SA Rice in attempt to locate the area where TS's body was dismembered and burned. CW indicated that it was difficult to identify the site because the events happened at night, the area was heavily wooded, and the CW was under duress at the time when the events occurred. The group found sites that the CW thought may potentially have been the correct location, but that did not ultimately fit all of CW's previous descriptions of the location where CW witnessed the disposal of TS's body. The search was terminated when the sun set.

13. On or about 01/24/2015, your affiant was also notified that on 01/08/2015, Kyle Gray and Matthew Leonard (referred as Matthew) were arrested on tribal charges by the Navajo Police. At the time of their arrest, Kyle and Matthew were operating a Ford Taurus, VIN 1FAFP55U23G173373. The vehicle was impounded by the Navajo Police, remained in their custody, and matched the physical description provided by CW as TS's vehicle.

14. On 01/26/2014, CI Boye met with CW who further identified the two men involved in TS's murder. CW stated that the truck's driver, who CW previously referred to as "Kingz," was Devan Leonard, and that the "shooter" who drove TS's vehicle was Kyle Gray. CW also added that, in addition to the previously mentioned long-handled axe, a samurai sword and a hatchet were used to dismember and dispose of TS's body. CI Boye and CW met with personnel from the Wheatfields Chapter House in Wheatfields, AZ, who led them to a "sheep camp" which was utilized by Kyle's family. Upon seeing the site, CW felt that it was likely the

spot where he/she witnessed TS's body being disposed of. This site was also consistent with CW's previous descriptions of the site were TS's body was disposed of.

15. Devan Leonard, also known as "Kingz," is Matthew Leonard's biological brother. Devan has been identified as having as having the census number 526,230, which confirms Devan's status as an enrolled member of the Navajo Nation tribe.

16. On 01/27/2014, your affiant, CI Boye, SA Rice, and other FBI and Navajo Police personnel conducted a search of the "sheep camp" identified in paragraph 13. Searchers identified a large fire-pit with skeletal remains among the ashes. The remains appeared to be human, and included a portion of the skull, several teeth, a portion of the spinal column, and several miscellaneous bone fragments. In addition to the human remains, men's jewelry, a cellular telephone, and clothes buttons were identified in the ashes from the fire-pit.

17. On 01/27/2015, SA Butler obtained a warrant to search the Ford Taurus impounded by Navajo Police upon Kyle's arrest. This vehicle matched the physical description of TS's vehicle provided by CW, and it's VIN matched the VIN provided by TS's family to your affiant on 01/30/2015. On 01/28/2015, your affiant, CI Boye, and SA Rice executed a search of the vehicle. The trunk of the vehicle was empty save for one speaker and some wires. The spare tire and carpet liner had been removed. Red stains were visible in multiple locations in the trunk. Eight of the red stains visible in the trunk were field-tested for blood using Phenolphthalein. Seven of the eight stains tested positive for the presence of blood. Later, Blue Star was applied to the trunk to test for the presence of additional blood samples that were not readily visible. The spray fluoresced multiple areas of the trunk, positively indicating the presence of blood.

18. On 02/03/2015, your affiant, CI Boye, and SA Rice interviewed TS's niece, who is 23 years old and was sharing an apartment with TS at the time of his disappearance. SA Butler presented her with photographs of some of the men's jewelry identified by searchers in the fire-pit on 01/27/2015. She positively identified a ring that was collected as belonging to TS. She recognized it as a ring that TS wore on his pinky and was 100% confident that the ring was his.

19. On 02/06/2015, your affiant, CI Boye, SA Rice and other Navajo Police gained consent to conduct a search at the residence of Devan and his family. Searchers identified a white pickup which matched the description of the truck CW described Devan driving on the night of TS's murder, and obtained consent to tow it to a secure location. Before it was towed, searchers found shotgun shells, other ammunition, a fire starter, and fuel containers in the vehicle. Searchers also identified several long-handled axes, a hatchet, a samurai sword, shotgun shells, and ammunition of various calibers in an unfinished trailer where Devan, Matthew, and Kyle were said to spend time.

20. On 03/18/2015, your affiant and CI Boye interviewed Devan. Devan confirmed that he knew TS and bought drugs from him. On the night of TS's death, he and Kyle met TS on the reservation because TS owed them drugs which they had previously paid for. Devan confirmed that they used the white truck that was seized during the 02/06/2015 search of his residence to meet TS. Devan was inside the truck smoking when he heard a "bang." He looked up and saw TS fall to the ground. He said that the shooting was not planned and he did not know why Kyle did it. TS was shot in the chest. Kyle loaded TS's body into the trunk [of TS's car]. Devan knew that TS was dead when he was loaded into the trunk because Devan checked his pulse. Devan removed two spent shells from the scene where TS was shot because Kyle left

Devan to "clean up the mess." Devan believed that TS was shot twice in the chest because Devan cleaned up two shells. Devan knew that Kyle kept TS's vehicle after he was killed, and continued to drive around in it. Devan advised Kyle against continuing to drive the car, but Kyle did not listen.

21. On 04/13/2015, your affiant and CI Boye interviewed Kyle Gray. Prior to his interviewers addressing the subject, Kyle referenced his January 2015 arrest, and stated the he did not know who owned the vehicle that he was arrested in. Your affiant informed Kyle that the vehicle belonged to TS, who was missing. Kyle stated that he found the vehicle parked at a convenience store with the keys in the ignition. Since no one was around to claim the vehicle, Kyle said that he took it. Your affiant disclosed that blood had been found in the trunk of the vehicle after it was taken from Kyle into police custody, and further disclosed that human remains had been found in a fire-pit near a sheep camp affiliated with Kyle's family. Kyle recognized your affiant's description of the sheep camp and acknowledged that it was his grandmother's camp, but stated that their family was not up there all of the time. He said that they used the camp in the spring and summer to let their sheep graze, but did not go up there in the winter. Kyle added that his family all had other homes where they lived most of the time. Kyle said he was disgusted and surprised that human remains had been identified in the fire-pit where his family cooks hotdogs, and would have to warn them to no longer use the pit. He claimed that someone else must have done this in his family's absence from the area. When your affiant expressed skepticism of Kyle's claim that the vehicle's ownership, the blood in the trunk, and the human remains at the sheep camp were all coincidences previously unknown to Kyle, Kyle stated that he no longer wanted to answer questions regarding the subject, and the interview was terminated.

Conclusion

22.    The incidents described above occurred within the boundaries of the Navajo Indian Reservation in the District of Arizona. Your affiant knows that the Navajo Nation Indian Tribe is a federally recognized Indian Tribe.

23.    Based on the foregoing, your affiant believes that on or about 12/16/2014, in the District of Arizona, within the confines of the Navajo Indian Reservation, Indian Country, the defendant, KYLE FILBERT GRAY, an Indian, did commit Second Degree Murder, in violation of Title 18, United States Code, Sections 1153 and 1111.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to best of my knowledge.**

_April 14, 2015_
Executed on (Date)

_Ryan R. Butler_
Ryan R. Butler
Special Agent
Federal Bureau of Investigation

___ Sworn by Telephone

Date/Time: _April 15, 2015 9:00 a.m._

_John Buttrick_
John Buttrick
United States Magistrate Judge

8